UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DYLAN T. D.,[1]

                               Plaintiff,                  DECISION AND ORDER

-vs-

                                                      1:20-CV-1313 (CJS)

COMMISSIONER OF SOCIAL SECURITY,

                             Defendant.

_____

INTRODUCTION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's applications for Child's Insurance Benefits ("CIB") and Supplemental Security Income ("SSI"). Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Pl.'s Mot., May 25, 2021, ECF No. 13; Def.'s Mot., Aug. 25, 2021, ECF No. 16. Plaintiff argues that the Commissioner's decision should be reversed and remanded because the Administrative Law Judge failed to properly develop the record, weigh the opinion evidence, and assess Plaintiff's residual functional capacity. Pl. Mem. of Law, 24–25, May 25, 2021, ECF No. 13-1. The Commissioner disputes Plaintiff's contentions. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings [ECF No. 13] is granted, the Commissioner's motion [ECF No. 16] is denied, and the matter is remanded for additional administrative proceedings.

---

[1] The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

PROCEDURAL HISTORY

The Court assumes the reader's familiarity with the facts and procedural history in this case, and therefore addresses only those facts and issues which bear directly on the resolution of the motions presently before the Court.

Plaintiff's Application and the Hearing Before the ALJ

Plaintiff's CIB and SSI applications were completed in August 2017, alleging a disability onset date of January 22, 2002. Transcript ("Tr."), 160–167, Mar. 26, 2021, ECF No. 12. In his applications, Plaintiff alleged that his ability to work was limited by Asperger's Syndrome. Tr. 179. On November 16, 2017, the Commissioner notified Plaintiff of the Commissioner's initial determination that Plaintiff was not disabled and therefore did not qualify for either CIB or SSI benefits. Tr. 84. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 114.

Plaintiff's request was approved, and the hearing was scheduled to be held via videoconference on June 10, 2019. Tr. 30. Prior to the hearing, Plaintiff's counsel submitted a brief outlining his theory of the case. Tr. 255–57. The brief identified several pieces of evidence in the record that counsel believed to demonstrate that Plaintiff's impairments were so severe as to prevent Plaintiff from performing any type of work on a regular basis, including:

> . . . 4/28/2014 IEP indicates that [Plaintiff] has impaired social interaction and development and has been resistant to associating with his peers.
>
> . . . 4/14 Psychological Evaluation indicates that [Plaintiff] is classified as a student with Autism due to his diagnosis of Asperger's syndrome . . . . [and] has significant deficits in adaptive behavior skills and demonstrates difficulty in his overall ability to cope with the natural and social demands of his environment.

3/11/19 Referral Case Note from Access VR indicates that the claimant has Autism/Asperger's syndrome with a genius IQ. It is noted that the claimant has problems with social interaction - is withdrawn, lacks awareness of social consequences of his behavior and cannot manage money. It is also noted that the claimant has an inadequate understanding of vocational capacities and refuses to accept or significantly distorts limitations . . . .

. . . 6/5/17 Report of Dr. Santa Maria indicates that the claimant has a diagnosis of Autism Spectrum Disorder with longstanding weaknesses in social functioning and various other aspects of adaptive functioning as supported by clinical and collateral interviews and behavioral observations. It is indicated that the claimant struggles with basic household activities of daily living and to routinely get between college classes on his own. It is further indicated that the claimant has a strong preference for adhering to usual routines with a high level of anxiety when presented with out of the ordinary. It is also noted that claimant has worked in the past in a job held under special circumstances.

. . . 1/22/18 ISP Report indicates that the claimant is diagnosed with Autism and has limitations in his daily life in the areas of [activities of daily living] due to his disability. It is noted that the claimant has sensory and motor deficits and is not capable of tying his shoes and has difficulty manipulating his buttons. It is noted that the claimant gets some assistance with his finances.

Tr. 256–257.

At the hearing, Plaintiff appeared with counsel and an impartial vocational expert ("VE") joined by phone. Tr. 32. In addition, the ALJ heard testimony from Plaintiff's aunt, with whom Plaintiff now lives and who had already submitted a detailed function report in support of Plaintiff's application. Tr. 48–54. With respect to his work history, Plaintiff testified that he has a bachelor's of science degree in mathematics and in physics, and is currently working on getting a PhD at the University of Buffalo. Tr. 35. He had a teaching assistant job at the school during the spring semester, which involved him teaching two lab sections each week, holding office hours, and grading tests and reports. Tr. 35. Other than that, despite his efforts with a job coach through Autism Services and "ACCESS-

VR," he stated that he has not been able to find a job outside of the school or for the summer. Tr. 36. Plaintiff thought that he could teach or do some sort of office work because his "major asset would be with [his] mind," and speculated that he could not do much physical work because he "just [doesn]'t have much dexterity with [his] hands." Tr. 37. For instance, he is not able to tie his own shoes, and he has difficulty getting buttons on. Tr. 37

Plaintiff testified that other than an individual with whom he "Skypes," he doesn't really have any friends; that his main activity outside of school is video games; and that the only people he interacts with on a weekly basis are his aunt, uncle, and another person living in their house. Tr. 38–40. He does have some chores within the house – doing his own laundry, washing dishes, mowing the lawn – but he often needs reminders to do them. Tr. 40–41. He is able to shower himself and brush his teeth, but he sometimes dresses inappropriately for the weather. Tr. 42, 44–45. Plaintiff does not have a driver's license and uses "paratransit" to get to school, where he is able to get around on the campus bus. Tr. 42. He has a cellphone and a charge card, but he doesn't really like spending money. Tr. 43. In her testimony, Plaintiff's aunt largely corroborated Plaintiff's testimony; she stated that he follows a routine pretty well, but has trouble communicating with people, does not want any responsibility for money, and doesn't do anything without reminders. Tr. 49–53.

The Commissioner's Five-Step Evaluation Process

The law defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration has outlined a "five-step, sequential evaluation process" to determine whether a claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008); 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)). The claimant bears the burden of proof for the first four steps of the process. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner only to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Asture*, 566 F.3d 303, 306 (2d Cir. 2009).

The ALJ's Decision

On November 30, 2018, the ALJ issued a decision denying Plaintiff's claim for CIB and SSI benefits. Tr. 15. In her decision, the ALJ stated that "to be entitled to children's insurance benefits, [Plaintiff] must have a disability that began at age 18 before attainment of age 22." Tr. 15. Thus, the ALJ disregarded Plaintiff's alleged onset date of January 22, 2002 and considered only whether Plaintiff demonstrated a disability between his 18th birthday on March 14, 2014 and his 22nd birthday on March 14, 2018. Tr. 17 (citing, *inter alia*, 20 C.F.R. § 404.350). *See also* 42 U.S.C. § 402(d)(1)(B).

At step one of the evaluation process, the ALJ found that Plaintiff has not engaged in substantial gainful activity since turning 18 on March 14, 2014. Tr. 17. At step two, the ALJ determined that Plaintiff has the following severe impairments: autism, Asperger's Syndrome, and obesity. Tr. 17. At step three, the ALJ assessed Plaintiff's alleged mental impairments utilizing the "special technique" required by 20 C.F.R. § 404.1520a and § 416.920a.[2] Tr. 18. In so doing, the ALJ determined that Plaintiff's alleged mental impairments caused no more than moderate limitations in any of the four psychological areas of functioning evaluated through the technique. Tr. 18. She found no limitation in understanding, remembering, or applying information; moderate limitation in interacting with others; no limitation in concentrating, persisting, or maintaining pace; and moderate limitation in adapting or managing himself. Tr. 18–19. Therefore, the ALJ found that the severity of Plaintiff's mental impairments between March 2014 and March 2018 did not meet or medically equal the criteria of listings in 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00. Tr. 18.

Then, before proceeding to step four, the ALJ carefully considered the entire record and determined that Plaintiff had the residual functional capacity[3] ("RFC") to

---

[2] The Second Circuit has held that where an ALJ's failure to adhere to the regulations' special technique is not harmless, failure to apply the "special technique" is reversible error. *See Kohler v. Astrue*, 546 F.3d 260, 265 n. 4 (2d Cir. 2008). The listings of specific mental impairments in 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 ("App'x 1 § 12.00") provide the ALJ with detailed guidance for application of the "special technique." Generally, a claimant must satisfy at least two classes of criteria to justify a finding of a mental disorder. "Paragraph A" criteria include the "the medical criteria that must be present in [a claimaint's] medical evidence" to indicate a particular disorder (e.g., the mental disorder of "schizophrenia" requires that the evidence include medical documentation of hallucinations or another similar symptom). App'x 1 § 12.00A(2)(a). "Paragraph B" criteria are four broad areas of mental functioning: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. App'x 1 § 12.00A(2)(b). A claimant must show an "extreme" limitation of one, or "marked" limitation of two, of the Paragraph B criteria. "Paragraph C" criteria are used to evaluate whether a claimant has a "serious and persistent" mental disorder.

[3] "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting

perform light work, as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b), except that "he is limited to superficial contact with the public and no work in teams or tandem." Tr. 19. Based on this RFC, on Plaintiff's age and education, and on the testimony of the impartial VE, the ALJ found at step four that Plaintiff would be able to perform such jobs in the national economy as electrical accessories assembler, housekeeper, and garment sorter. Tr. 23. Hence, the ALJ concluded that Plaintiff *is not* disabled for the purposes of CIB or SSI. Tr. 23–24.

Plaintiff sought review of the ALJ's decision with Commissioner's Appeals Council, but review was denied on August 6, 2020. Tr. 1. The ALJ's decision thus became the "final decision" of the Commissioner.

## LEGAL STANDARD

42 U.S.C. § 405(g) defines the process and scope of judicial review of the final decision of the Commissioner on whether a claimant has a disability that would entitle him or her to an award of benefits. *See also* 42 U.S.C. § 1383(c)(3). "The entire thrust of judicial review under the disability benefits law is to ensure a just and rational result between the government and a claimant, without substituting a court's judgment for that of the [Commissioner], and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence having rational probative force." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal citation and quotation marks omitted).

---

despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545, § 416.945.

Therefore, it is not the reviewing court's function to determine *de novo* whether the claimant is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, "[t]he threshold question is whether the claimant received a full and fair hearing." *Morris v. Berryhill*, 721 F. App'x 25, 27 (2d Cir. 2018). Then, the reviewing court must determine "whether the Commissioner applied the correct legal standard[s]." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Provided the claimant received a full and fair hearing, and the correct legal standards are applied, the court's review is deferential: a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g).

"Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). Consequently, once an ALJ finds facts, a reviewing court can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d at 448 (citation omitted).

DISCUSSION

As noted above, Plaintiff maintains that the Commissioner's denial of his application for CIB and SSI benefits should be reversed and remanded for further proceedings because the ALJ failed to properly develop the record, weigh the opinion evidence, and assess Plaintiff's RFC. Pl. Mem. of Law at 24–25.

<u>The ALJ's Duty to Develop the Record</u>

It is a well-established rule in the Second Circuit that, even when a claimant is represented by counsel, "the social security ALJ, unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-

adversarial nature of a benefits proceeding." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d

503, 508–09 (2d Cir. 2009); *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996). The ALJ's

duty in this regard is heightened when a claimant alleges a mental illness. *See, e.g., Stack*

*v. Comm'r of Soc. Sec.*, 2020 WL 5651601, *3 (W.D.N.Y. Sept. 23, 2020).

Specifically, pursuant to 20 C.F.R. § 404.1512(b) and § 416.912(b)(1), the ALJ is

responsible for developing a claimant's complete medical history for at least the twelve

months preceding the month in which the claimant filed his application, and "make every

reasonable effort" to help Plaintiff get medical evidence from his medical sources. Under

the regulations, "complete medical history means the records of [the claimant's] medical

source(s) covering at least the 12 months preceding the month in which [the claimant]

file[s his or her] application." 20 C.F.R. § 404.1512(b)(1)(ii). Further, "every reasonable

effort" means that the Commissioner:

> will make an initial request for evidence from [the claimant's] medical source
> or entity that maintains [the claimant's] medical source's evidence, and, at
> any time between 10 and 20 calendar days after the initial request, if the
> evidence has not been received, [the Commissioner] will make one follow-
> up request . . . .

20 C.F.R. § 404.1512(b)(1)(i). In furtherance of this end, the ALJ has discretionary power

to "issue subpoenas for the appearance and testimony of witnesses and for the

production of books, records, correspondence, papers, or other documents that are

material to an issue at a hearing." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998)

(quoting 20 C.F.R. § 404.950(d)(1)).

However, the ALJ is not required to seek additional evidence when the record is

"adequate for [the ALJ] to make a determination as to disability." *Janes v. Berryhill*, 710

F. App'x 33, 34 (2d Cir. 2018) (quoting *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)). A

record is adequate to make a determination where there are no "obvious gaps," and a "complete medical history" exists. *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999).

In the present case, Plaintiff argues that the ALJ failed in her duty to develop the record in two respects. First, Plaintiff contends that it was error that no consultative examination was ever ordered despite comments by state agency psychological consultant, Dr. Inman-Dundon, that "[s]ince we are not able to obtain an exam from [Plaintiff]'s treating source, a consultative exam is necessary." Tr. 287. *See* Pl. Mem. of Law at 17–18. Second, Plaintiff claims that the ALJ failed in her duty to develop the record when she failed to help Plaintiff obtain treatment notes from his treating counselor, Dr. Moyer. Tr. 18–19. In response to Plaintiff's arguments, the Commissioner maintains that the ALJ acted within her sound discretion when she declined to order a consultative examination, and that the ALJ was under no duty to subpoena Dr. Moyer's treatment notes because they were not reasonably necessary for the presentation of Plaintiff's case and because HIPAA regulations precluded the ALJ "from requesting underlying psychotherapy notes." Def. Mem. in Opp., 14–17, Aug. 25, 2021, ECF No. 16-1.

*The ALJ's Failure to Order a Consultative Exam*

The Court finds no merit in Plaintiff's argument that the ALJ erred by failing to order a consultative examination based on Dr. Inman-Dundon's statement regarding the necessity of a consultative exam to adequately evaluate Plaintiff's mental status. To begin with, ALJs are responsible for making their own findings based on an independent review of the evidence in the record, and are not required to adopt prior findings by state reviewers. 20 C.F.R. § 404.1513a(b); *SSR 17-2p: Titles II & Xvi: Evidence Needed by Adjudicators at the Hearings & Appeals Council Levels of the Admin. Rev. Process to*

*Make Findings About Med. Equivalence*, 2017 WL 3928306 at *3 (S.S.A. Mar. 27, 2017). The ALJ, therefore, was not bound by Dr. Inman-Dundon's conclusion that a consultative examination was necessary.

Perhaps more to the point, the express reasoning behind Dr. Inman-Dundon's call for a consultative examination in November 2017 was that the Commissioner was not able to obtain an exam from Plaintiff's treating source. Tr. 287. Prior to Plaintiff's hearing before the ALJ, however, Plaintiff submitted a medical source statement from Dr. Brian Moyer, Plaintiff's treating psychologist, dated May 24, 2019 and indicating that Dr. Moyer had treated Plaintiff 43 times over four years, and as recently as the previous month. Tr. 514–519. This submission, from a treating source and based on a long-standing treatment relationship, obviated the need for a consultative examination. Tr. 514.

### The ALJ's Failure to Obtain Dr. Moyer's Treatment Records

On the other hand, the Court does find merit in Plaintiff's argument that the ALJ failed in her duty to develop the record when she did not assist Plaintiff in obtaining Dr. Moyer's treatment notes. Before determining whether the Commissioner's final decision is supported by substantial evidence under 42 U.S.C. § 405(g), "the court must first be satisfied that the ALJ provided plaintiff with 'a full hearing under the Secretary's regulations' and also fully and completely developed the administrative record." *Saffron Campbell v. Comm'r of Soc. Sec.*, No. 18-CV-768, 2020 WL 830435, at *3 (W.D.N.Y. Feb. 20, 2020) (quoting, *inter alia*, *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982)). Under the circumstances of the present case, the Court is not so satisfied.

11

On May 23, 2019, Plaintiff's counsel notified the ALJ that his office had made multiple unsuccessful attempts to obtain records from Dr. Moyer, and requested that the ALJ subpoena Dr. Moyer's treatment records. Tr. 254. Dr. Moyer's unresponsiveness had also been a problem at the initial level of the Commissioner's administrative review process. Tr. 222 (documenting two unsuccessful attempts by the Commissioner to obtain records from Dr. Moyer in August and September 2017).

Soon thereafter, however, Plaintiff did receive a five page "Mental Impairment Questionnaire" completed by Dr. Moyer on May 24, 2019, which Plaintiff then submitted as a medical source statement to the ALJ on June 3, 2019. Tr. 514–519. At the hearing, Plaintiff's counsel did not object to the record, and did not request that the record be held open any longer to obtain treatment notes from Dr. Moyer to provide support for his opinion, but counsel did note that "[t]he only thing we've been able to get from Dr. Moyer . . . was the mental impairment questionnaire that he filled out . . . ." Tr. 33. There is no record of the Court taking any further action to obtain the requested treatment notes from Dr. Moyer.

Absent Dr. Moyer's treatment notes, there is an obvious gap in the record and the ALJ has not compiled a complete medical history. *See, e.g., Pettit v. Comm'r of Soc. Sec.*, No. 1:18-CV-00221-MAT, 2019 WL 4439294, at *2 (W.D.N.Y. Sept. 17, 2019) (finding the ALJ failed in his duty to develop the record where Plaintiff had informed him of her inability to get three years of relevant treatment records from Plaintiff's treating psychiatrist). First and most obvious, a complete medical history calls for records from Plaintiff's medical sources for the 12 months preceding his application. In this particular case, the snapshot provided by the medical source statement from Dr. Moyer in 2019 does not provide the

necessary context for the 12 months during which Dr. Moyer was apparently treating Plaintiff prior to his application for CIB and SSI benefits in 2017. Moreover, there is an obvious gap that Dr. Moyer's treatment notes from this time period would fill to provide context for such ambiguous opinions as those of Dr. Santa Maria, a neuropsychologist who evaluated Plaintiff over two days in 2017 and indicated of Plaintiff that "it is not ruled out that he may be able to progress into and maintain part time or full time competitive employment . . . ." Tr. 276.

Second, the treatment notes would also provide greater insight into Dr. Moyer's opinion. Although the check-box residual functional capacity assessment that Dr. Moyer completed in his 2019 medical source statement indicates that Plaintiff possessed many of the mental abilities and aptitudes needed to do unskilled work, several other elements of the statement raise questions about Plaintiff's fitness for work during the relevant period. In particular, Dr. Moyer's statement indicated that he had been treating Plaintiff for "autism spectrum disorder" since January 2015, that the treatment was "focused on teaching skills and strategies to increase communication, problem solving, and behavioral and emotional regulation," and that Plaintiff "has made a great deal of improvement [that] is likely to continue." Tr. 515. This suggestion of improvement over time – coupled with Dr. Moyer's indication that Plaintiff's mental disorder and treatment was of at least 2 years' duration (Tr. 517), that Plaintiff had minimal capacity to adapt to changes in the environment (Tr. 517), and that Plaintiff could not manage benefits in his own best interest (Tr. 519) – raise questions about the severity of Plaintiff's mental impairments prior to 2019.

The Commissioner maintains that the ALJ had an adequate record from which to reach a conclusion of disability. However, the Court rejects that position based on the concerns expressed above. Further, the Court is not persuaded by the Commissioner's argument that the ALJ was precluded from requesting Dr. Moyer's psychotherapy notes because there are legal safeguards in place under the Health Insurance Portability and Accountability Act ("HIPAA") that prevent healthcare professionals from being required to disclose such notes. As one court in this Circuit has reasoned, "the SSA routinely obtains mental health records for use in making disability determinations in cases of claimed mental impairments, and if the ALJ believed that a HIPAA release was needed to secure the production of a provider's records, then he presumably could have requested the necessary release from Plaintiff." *Flinton v. Berryhill*, No. 19CV02054 (LGS) (DF), 2020 WL 5634462, at *30 (S.D.N.Y. Sept. 4, 2020), *report and recommendation adopted sub nom. Flinton v. Saul*, No. 19CIV2054LGSDF, 2020 WL 5634321 (S.D.N.Y. Sept. 21, 2020). *See also Weiss v. Comm'r of Soc. Sec*., No. 19-CV-5916 (MKB), 2021 WL 2010503, at *13 (E.D.N.Y. Mar. 23, 2021) (collecting cases from multiple other courts in the Second Circuit).

Although a claimant bears the burden to prove that he suffers from a cognizable disability, an ALJ's affirmative duty to develop the record exists even when a social security claimant is represented by counsel. *Pratts*, 94 F.3d at 37. "Remand is appropriate where this duty is not discharged." See, e.g*., Saffron Campbell*, 2020 WL 830435 at *5 (citing *Moran*, 569 F.3d at 114-15). Accordingly, this case is remanded to the Social Security Administration with directions to obtain and consider the treatment notes of Dr. Moyer.

Because Plaintiff's right to a "full and fair hearing" before the ALJ is a "threshold question," the Court cannot address Plaintiff's other claims at this time with respect to the ALJ's decision. *Morris*, 721 F. App'x at 27.

CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Plaintiff's motion for judgment on the pleadings [ECF No. 13] is granted, the Commissioner's motion for judgment on the pleadings [ECF No. 16] is denied, and the matter is remanded to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g).

DATED:     March 11, 2022
           Rochester, New York


                                    _____
                                    HON. CHARLES J. SIRAGUSA
                                    United States District Judge